UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DOUGLAS M. COX,<br><br>　　　　　Defendant. | Case No. CR08-399RSL<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |

This matter comes before the Court on defendant Douglas M. Cox's "Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)." Dkt. #49. Defendant has also filed a "Motion to File Overlength Brief" (Dkt. #48) which is hereby GRANTED. The Court, having considered the motion, exhibits, and the record contained herein, finds as follows:

**I.　　BACKGROUND**

Defendant is a 62-year old inmate currently detained at the Federal Correctional Institution ("FCI") Sheridan. In 2009, defendant pleaded guilty to armed bank robbery in violation of 18 U.S.C. §§ 2113(a), (d). Dkt. #29. On July 10, 2009, defendant was sentenced to a term of 235 months' imprisonment with five years of supervised release. Dkt. #37. Defendant is currently scheduled for release from the custody of the Federal Bureau of Prisons ("BOP") on March 17, 2025. Defendant moves for compassionate release based on his heightened risk for developing complications if he contracts COVID-19 while incarcerated.

ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE - 1

## II.     LEGAL FRAMEWORK

The compassionate release statute provides narrow grounds for defendants in "extraordinary and compelling" circumstances to be released from prison early. See 18 U.S.C. § 3582(c). The First Step Act of 2018 amended the procedural requirements governing compassionate release. See id. Prior to the First Step Act's passage, only the Director of the BOP could bring motions for compassionate release. The Director rarely filed such motions. See, e.g., United States v. Brown, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019). Congress amended the statute to allow defendants to directly petition district courts for compassionate release. As amended, 18 U.S.C. § 3582(c)(1)(A) states in relevant part,

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > >
> > > > (i) extraordinary and compelling reasons warrant such a reduction; . . .
> > > >
> > > > (ii) . . .
> > > >
> > > > and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission[.]

Prior to passing the First Step Act, Congress directed the Sentencing Commission to promulgate a policy statement defining "extraordinary and compelling reasons" in the compassionate release context. See 28 U.S.C. § 994(t). Section 994(t) provides,

ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE - 2

The Commission, in promulgating general policy statements regarding the sentencing modification provisions in [18 U.S.C. § 3582(c)(1)(A)], shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

The Sentencing Commission implemented this directive from Congress with a policy statement—U.S.S.G. § 1B1.13. In relevant part, the policy statement provides,

> **Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)**
>
> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction;
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.
>
> **Commentary**
>
> **Application Notes:**
>
> 1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>    (A) **Medical Condition of the Defendant**—
>
>    (i)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE - 3

      (ii)    The defendant is—

           (I)    suffering from a serious physical or medical condition,

           (II)    suffering from a serious functional or cognitive impairment, or

           (III)    experiencing deteriorating physical or mental health because of the aging process,

      that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**—

    (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

2. **Foreseeability of Extraordinary and Compelling Reasons.**—For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

3. **Rehabilitation of the Defendant.**—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an

ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE - 4

> extraordinary and compelling reason for purposes of this policy statement.
>
> 4. **Motion by the Director of the Bureau of Prisons.**—A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1. The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.
>
> This policy statement shall not be construed to confer upon the defendant any right not otherwise recognized in law[.]

U.S.S.G. § 1B1.13.

The Sentencing Commission has not updated its policy statement to reflect the amendments of the First Step Act. See, e.g., Brown, 411 F. Supp. 3d at 449 n.1 ("As district courts have noted often this year, the Sentencing Commission has not amended the Guidelines following the First Step Act and cannot do so until it again has four voting commissioners." (citations omitted)). However, the First Step Act renders some provisions of the Commission's outdated policy statement obsolete, including that compassionate release "may be granted only upon motion by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.4; see also United States v. Haynes, No. 93-CR-1043 (RJD), 2020 WL 1941478, at *11 (E.D.N.Y. Apr. 22, 2020) ("The heart of the matter . . . is that many of these policy statements . . . not only pre-date the [First Step Act] amendment of § 3582(c) but also continue to reference expressly BOP's *pre-FSA* role as exclusive gatekeeper, which of course the [First Step Act] eliminated."). From this discrepancy emerges a split among district courts as to whether the Court, rather than the BOP Director, can determine pursuant to U.S.S.G. § 1B1.13 cmt. n.1(D) that "there exists in defendant's case an extraordinary and compelling reason other than, or in combination with, the

reasons described in subdivisions (A) through (C)." See United States v. Cantu, 423 F. Supp. 3d 345, 350 (S.D. Tex. 2019) (quoting U.S.S.G. § 1B1.13 cmt. n.1(D)).

The government argues that the policy statement set forth in U.S.S.G. § 1B1.13 binds the Court's interpretation of "extraordinary and compelling" reasons. See Dkt. #51 at 6-7. This Court has rejected that position. See United States v. Van Cleave, Nos. CR03-247-RSL, CR04-125-RSL, 2020 WL 2800769, at *3-5 (W.D. Wash. May 29, 2020). For the reasons set forth in detail in Van Cleave, "the Court finds the guidance of U.S.S.G. § 1B1.13 persuasive, but not binding." Id. The Court will exercise its discretion to consider "extraordinary and compelling" circumstances that may exist beyond those explicitly identified by the Sentencing Commission in its outdated policy statement. Id.

### III. DEFENDANT'S CIRCUMSTANCES

Before the Court can consider the merits of defendant's motion, it must determine whether he has met the statutory exhaustion requirement for compassionate release. See 18 U.S.C. § 3582(c)(1)(A). The parties agree that defendant satisfied this requirement by filing a request for compassionate release with the Warden of FCI Sheridan on May 8, 2020, which defense counsel resubmitted on May 26, 2020. See Dkt. #49-13 (Ex. 15). Because defendant has exhausted his administrative remedies, the Court will consider the merits of his motion for compassionate release.

Defendant's motion for compassionate release is based primarily upon his heightened risk of developing serious complications if he contracts COVID-19 while incarcerated at FCI Sheridan. The Court need not reiterate the widely-known information regarding the symptoms of COVID-19 and the devastating global impact of the virus. COVID-19 has created unprecedented challenges for federal prisons, where inmate populations are large and close contact between inmates is unavoidable. As of July 10, 2020, the BOP reports 2,666 federal inmates and 248 BOP staff have active, confirmed positive COVID-19 test results. See COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 10, 2020). Since the BOP reported its first case in late March 2020, at least ninety-four

federal inmates and one BOP staff member have died from the virus. Id. Since the date defendant filed this motion, FCI Sheridan has confirmed one case of COVID-19. Id.

Defendant has established that his health issues place him at higher risk for developing serious complications if he contracts COVID-19. A review of defendant's BOP medical records demonstrates that he suffers from type II diabetes, hepatitis C, hyperlipidemia, hypertension, cognitive impairment, PTSD, depression, and high cholesterol. See Dkt. #50. The government concedes that defendant has established "extraordinary and compelling" circumstances because he suffers from type II diabetes, an underlying medical condition that the Centers for Disease Control ("CDC") has recognized as increasing an individual's risk of developing COVID-19 complications. See Dkt. #51 at 8; see also People Any Age with Underlying Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 10, 2020). The Court agrees and finds that defendant has met his statutory burden to establish that "extraordinary and compelling" reasons support compassionate release.

However, the Court's analysis does not end here. Before the Court can grant defendant's request for compassionate release, it must also find that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13. Under 18 U.S.C. § 3142(g), the Court considers the nature and circumstances of the charged offense, the defendant's history and characteristics, his physical and mental condition, his family and community ties, his past conduct, his history relating to drug or alcohol abuse, and his criminal history. A review of these factors precludes a finding that defendant is not a danger to the safety of others or the community.

Prior to defendant's current term of imprisonment, he served two terms of imprisonment for bank robberies. From 1998 until his most recent arrest in 2008, defendant committed numerous bank robberies, many while armed.[1] In 1998, defendant was sentenced to 45 months'

---

[1] The Court is not persuaded by defendant's contention that the dangerousness of his armed bank robberies should be qualified because he used pellet and BB guns rather than real guns. Both the government and defendant recognize that, even if defendant did not intend to use deadly force against his victims, his guns looked realistic enough to scare his victims and, in the case of the 2008 robbery, led

ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE - 7

imprisonment for a string of armed bank robberies.  In 2002, while on supervised release for his 1998 convictions, defendant committed two more bank robberies and was sentenced to 84 months' imprisonment.  Following the 2002 robbery, defendant told his Presentence Report writer that he would not rob a bank again.  But in 2008, four months after his release from prison for the 2002 bank robberies, defendant committed the bank robbery for which he is currently incarcerated.  Defendant carried a pellet gun during the robbery, and later led police on a high-speed chase in a getaway car.  Police ultimately shot defendant after he pointed his pellet gun toward them.

In support of his motion, defendant asserts that his lack of prison disciplinary history and his newfound commitment to living lawfully alleviates any potential dangerousness to society. While the Court commends defendant on his progress and good behavior while in prison, his credibility is undermined by the fact that he has committed dangerous bank robberies after each prior release from incarceration for the same crime.  While defendant emphasizes that his criminal past was fueled by alcoholism, the Court remains concerned that if released, defendant will again fall into destructive behavioral patterns.  The Court has personally experienced similar patterns with defendants who behaved well in prison, but who upon release immediately returned to their prior pattern of substance abuse followed by armed robberies of banks.  This includes individuals who were older than defendant here.  On these facts, defendant's history of returning to commit bank robberies each time he is released from prison, and his prior misrepresentation regarding his willingness to change his ways, outweigh defendant's good behavior during his current term of imprisonment.  For these reasons, the Court cannot conclude that defendant does not pose a continued danger to any other person or to the community.[2] U.S.S.G. § 1B1.13.  Defendant's motion for compassionate release must therefore be DENIED.

---

to a shootout with police officers which could have endangered the robbery victims, police officers, and other innocent bystanders.

[2] Because the Court has determined that defendant poses a danger to the community, it need not further address the factors set forth in 18 U.S.C. § 3553(a).  That said, the Court agrees with the government's analysis of the § 3553(a) factors, see Dkt. #51 at 10-11, and concludes that defendant's circumstances do not warrant a reduction in sentence.

ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE - 8

## IV. CONCLUSION

For all the foregoing reasons, defendant's Motion for Compassionate Release (Dkt. #49) is DENIED.[3]

DATED this 13th day of July, 2020.

*MWS Lasnik*
Robert S. Lasnik
United States District Judge

---

[3] Defendant's motion to file overlength brief (Dkt. #48) is GRANTED.

ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE - 9